Good morning, your honors. May it please the court. My name is Avisayala and I represent the petitioner Ms. Claudia Garcia Castro. Today I'm here to address the legal issues of whether the Board of Immigration Appeals erred in applying a clear error standard to her issues instead of the appropriate de novo standard to the issues of social group, PSDs, cognizability, and the Convention Against Torture. First, I will demonstrate how the BIA improperly applied the clear error standard specifically to the cognizability issue under or akin to Umana Escobar. And next, I want to explain how the BIA erred in finding that the petitioner waived the argument regarding his particular social group, how the BIA erred in finding that. And finally, I will address the Board's erroneous decision and use of the clear error standard in reviewing the denial of the CAT claim. Could you reverse your order to see how flexible you are? And start with the CAT claim. And I'm less interested in the standard of review because I think the Board at least mentioned the appropriate standard of review than I am in the IJ's statement that what her past experience was not torture because it was inflicted by a domestic partner and there was no government agent involved in it. Is that an accurate statement of the law of what it can be, what it takes to be torture? Well, Your Honor, first of all, we do want to emphasize on the standard that you use. I understand you want to, but that's not what I'm asking you about. I'm asking you about whether or the IJ's statement about whether she experienced past torture, and remember the BIA pretermitted the acquiescence issue, whether that statement is an inaccurate statement of the law. Can you answer that for me? Yes, Your Honor, it is an inaccurate statement of the law since she did, in fact, experience in determining whether the harm equates to torture, the court has to re-evaluate the facts. And in this case, the petitioner had suffered extremely domestic violence. Well, I'm not asking whether or not we should, the record compels a finding of torture. That's why I keep pushing away from the standard of review. I'm just trying to figure out whether the IJ's statement about what would constitute torture. And the IJ says she complains of, I don't want to quote it, but abuse by a domestic partner, not inflicted by an agent of the state. That's roughly the quote. And I'm trying to figure out whether that's an inaccurate statement of the law. Can one be tortured by a domestic partner, even if the state is not involved in the torture? Yes, Your Honor, so it is an inaccurate statement of the law, because in determining whether a state actor is involved, it also encompasses whether the government turned a willful blindness. Yeah, to be fair to the IJ, the IJ then went and said, I don't find any government acquiescence in this. So this wouldn't give me any trouble, but we have the BIA pretermitting the issue of acquiescence. It said we don't need to address it. So I'm trying to figure out if the, I'm trying to figure out the effect of what the IJ's finding on past torture is on the CAT disposition in this case. Can you help me with that? Yes, Your Honor. Well, because the acquiescence is different than willful blindness in the description of the court, acquiescence requires that the government actually help in the torture or, but willful blindness has also been considered to meet the torture standard, even if it's a third party actor. If the petitioner, for example, in this case has gone to the authorities, and they haven't been able to help her or actually have turned her away on multiple occasions, even stating at one point that they wouldn't consider the domestic violence unless she was bleeding or they saw something physical on her face or on her body. So turning away from helping someone in these certain situations does count as, or does constitute willful blindness and would constitute acquiescence. Well, I can't, let me ask you this. I can't find in your brief, does Ms. Castro de Garcia assert that her past abuse constituted torture? I can't find that argument in her brief. Can you point that to me? Your Honor, I believe, I didn't brief this case. But however, I do believe that because we were addressing that even the CAT was under the wrong legal standard and it should be reviewed to know that there was no issue. But where do you make that argument? You didn't, even if you didn't do the briefing, you're still responsible for them here. So where is that, where's the argument made in your brief that her past abuse constituted torture? Where in the brief can I find that argument? Well, Your Honor, the, for the CAT claim specifically, the brief does address on, give me one second, Your Honor. How about page nine? Thank you, Your Honor. You know, if you're not, if you haven't done the brief, you ought to be familiar with it. Yes, Your Honor. So page nine is your, so it appears that Ms. Castro de Garcia only reported her abuse one time. Is that correct? And the police gave the reason that they, that it was a week after it happened and they couldn't see her bruises. Is that, would that be a correct statement of the record? That is the correct statement, Your Honor. And I believe that it wasn't hashed out more in terms of whether or not that was torture because the brief does mention how that is a question of law, like whether something meets the standard of torture. And here, the judges didn't, again, Your Honor, I know that you don't want to address the standard of review, but I believe that's why it wasn't mentioned further because it's a legal standard. Whether a certain harm meets the definition of torture is not a question of fact, it's a question of law. All right. It also appears, it also appears that the BIA concluded that Ms. Castro de Garcia fears an individual person with whom she had not spoken since she had come to the United States in late 2012 or 2013 and she does not know where he is located in El Salvador. So, how can, and said she can't establish that she was more likely than not to be tortured by him. Is that a fair statement of the record? Yes, Your Honor. Okay, thank you. However, because, again, the question of whether or not something meets the definition of torture, like I said, is a matter of law and not a matter of fact. And whether or not the BIA would make that determination has to be under the de novo standard of review. And again, they use clear error for this. I would like to reserve some time for rebuttal, Your Honor. All right. You have a minute and 44 seconds. Mr. Coleman? Thank you, Your Honors, and may it please the Court. My name is Robert Coleman and I represent the Attorney General. Turning to the CAT first, the Board's determination that under matter of Burbano it would affirm the immigration judge's denial of the CAT application here. Except for the acquiescence part. Except for the acquiescence part. The Board says we're not finding acquiescence. That's correct. So, the Board did affirm under matter of Burbano, but it did specifically limit that affirmance to specific aspects of the immigration judge's denial. And the CAT claim is no different, yes, as to whether or not the evidence demonstrated that Castro would potentially be subject to trial. Right. And so, I want to combine the questions that Judge Callahan and I were asking and see if you can help me with this. It seems to me that the IJ's statement that your past treatment was not torture because it was at the hands of a domestic partner and not at the hands of a government actor, misstates the legal standard for torture. You agree that a domestic partner can be somebody who inflicts torture, correct? It is possible, it seems, but that is not what the immigration judge said. Well, then let me just help me and then you can tell me what. So, you agree that a domestic partner can be a torturer? I don't know of any case law that says that. Is it the government's position that a domestic partner cannot be a torturer? This issue wasn't raised, so I don't have something at my fingertips on that particular issue, but I know that the immigration judge here did not state that. The immigration judge did say that, this is page 56 of the record, that the court finds that what happened to respondant while terribly unfortunate does not rise to the level of torture. Right, because, go on, read the rest. It says, comma, and also that it is individualized domestic violence. So, it doesn't say because it was domestic violence it's not torture. Rather, it didn't rise to the level of torture. Then she's also noting that this was an incident of domestic violence and that leads into the rest of the analysis that was discussed previously. But you agree that individualized domestic violence could, it's not categorically not torture. It could be torture in a given case. I would like to address that more fulsomely in a later filing if the court would like to see that, but I don't have that at my fingertips because that was not the issue. The definition of torture is extreme mistreatment. Put aside for a second acquiescence. If a domestic partner puts somebody on a rack and moves the rack and breaks all their bones, that's torture under the definition in the regs, is it not? The misconduct would rise to the, the treatment specifically would rise to the level of torture. It seems that that would be true. I'm just saying that I don't know. But if you look at, torture is defined in 8 CFR 1208 A1 as requiring the pain or suffering be, quote, inflicted by or at the instigation of or with the consent or acquiescence of a public official. So doesn't that say that there's got to be some consent or acquiescence to be torture for purposes of this case? Correct. And the BIA said we don't care about that. We don't care about in this case, we're going to find an absence of torture, notwithstanding any evidence of acquiescence or non-acquiescence. That's what they said. That's correct. Which is only one aspect of a potential cap claim. Okay. So I'm just trying to figure out still, if the judge stated the legal standard wrong, the BIA still could have gotten it right by saying, even assume we don't see a reasonable probability in the future or something like that. But I'm just trying to figure out how it ruled on acquiescence. Or it could have held acquiescence wasn't shown. But it didn't. So this is the difficulty I have. I think the IJ statement of the legal standard for torture by saying it's not torture because it was done by a domestic partner and not by the government is a misstatement of the law. If I'm right about that, then what do we do with this case? We can't say it's okay because there was acquiescence, which is what the IJ said, because the BIA said we're not worried about acquiescence. So what do we do if I'm right that the judge misstated the law? You could affirm anyway, because there are other grounds that were provided that were articulated by the board that justified that determination. Well, tell me what they are. They are that Castro fears this one individual, but has not heard from the individual and now going on 12, 13 years, and that she doesn't know the individual's location. These specific findings were articulated by the board. That was the basis of the board's determination. And again, the immigration judge, as the words indicate, did not state because this was domestic violence, it's not torture. It was a separate determination. And the bulk of the analysis goes to the issues that the board eventually affirmed on, namely... The IJ could be read the way Judge Hurwitz is reading it. I think the problem is we don't want to work into the development of immigration law, a wrong statement, an incorrect statement of the law. Understood. And the board did not affirm that. So you wouldn't be endorsing that by simply affirming the board's decision. Under other circumstances, I mean, even in our own country, there were substantial periods of time where the police just ignored complaints about domestic violence. They just didn't take it seriously, although they do now. Correct. And here we don't have acquiescence as a particular issue. But what the board did was, even if the court did conceive of the immigration judge as having misstatism, the board did not on that basis. So that's not an issue before the court. And there was no argument, of course, on this issue by the parties below. So did Castro, did Garcia assert that her past abuse constituted torture? I asked for where in the record that was. And she said, well, Judge Hurwitz said page nine, and then she said yes. Is this issue even before us? It is not before the court. This was not briefed. And the reason why, it's for good reason, because that aspect, the particularly concerning aspect here that was articulated, was not what was relied on by the board here. The board relied on these two specific issues, namely the fact that the individual in El Salvador, we don't know his location, Castro doesn't know his location, and Castro hasn't heard from him. But let's assume hypothetically that Judge Hurwitz is correct, that the immigration judge misstated that. Would that, a determination that Ms. Castro's, Garcia's past abuse rose to the level of torture, change the BIA's determination that Ms. Castro de Garcia does not face future persecution if returned to El Salvador? Why or why not? It would not, because there is no presumption because of having faced past torture that you would face it in the future, unlike what you have in the asylum withholding context. It's a different context. Haven't we said something like past torture is the strongest indication of the likelihood of future torture? It has been articulated as an indication. And so, the agency is tasked with reviewing the evidence and making a determination. And here, the question before the court is whether there is substantial evidence to support the board's decision. It doesn't have to be the same decision that this court would have arrived at if it was sitting in first instance, in the shoes of the- Yeah, and what I'm trying to figure out, and I think we're struggling with, aside from the preservation issues, is whether the board's decision was, because it cited Burbano, adopted the IJ's statement that I find troublesome. And that's, if it did, now we have a board decision that says, in effect, a domestic abuser can't torture, and that troubles me. Well, that gets us back to our earlier conversation, where the board did affirm under matter of Burbano, but it did not do a blanket affirmance saying that we affirm everything that the immigration judge did. It specifically articulated the individual grounds that it was affirming. That's, unfortunately, that's what Burbano stands for, though, that it's adopting the IJ. So, it's kind of inconsistent. Well, this court has said different. In Abebe v. Gonzalez, this court articulated that in an explanation, although in that case, the court stated that the Burbano affirmance did exhaust the issues. It went on to state that the board could articulate a Burbano affirmance that specifically addresses only certain issues, but that it needs to articulate that in its decision. Here, that's exactly what the board did. It affirmed only under specific grounds, and you can see that from the language used, and it only adopted those specific determinations from the immigration judge, and it did not wade into the perceived problematic issues. So, this court would not be endorsing that, even if it were to affirm here, which we asked the court to do. All right. Any further questions? All right. Thank you, counsel. Thank you. Ms. Ayala? Yes, Your Honor. Just again, bringing the issue, under Hernández Montiel, the Ninth Circuit did clarify for an asylum applicant, he does not have to demonstrate that the government itself directly engaged in persecution. If the government is unwilling or unable to protect an individual from harm, that can be enough to establish eligibility. And also, again, turning a blind eye constitutes acquiescence. The government doesn't have to be the actor. A private actor in domestic violence cases has been deemed to be enough for convention against torture or for that person to be considered the torture for immigration purposes. May I ask you, who did prepare this brief, the blue brief? Your Honor, attorney, I believe, attorney Mario Acosta. And how did the case end up with you? Excuse me? How did the case end up with you, after the brief's filed? I recently joined the firm where this case is under. Okay. So, someone in your firm prepared this brief? He's of counsel, Your Honor. He was retained to help us with this brief. He's not part of our law firm at this point. So, and it's a very unfortunate brief. It doesn't exhaust all the issues that should have been exhausted and doesn't leave us with much, or your client with much. And I believe, Your Honor, again, it is because the attorney was focusing more on the court where to find that the BIA applied the wrong legal standard, then he wouldn't have to go into the factual arguments regarding whether it meets torture or doesn't meet torture. I just would like to caution you and your firm in the future that you need to raise in the opening brief every issue that you want us to consider, and specifically and articulate it, because otherwise you're going to find yourself waiving a lot of issues. Yes, thank you, Your Honor. All right. Thank you. Castro de Garcia v. McHenry will be submitted and we will take up.
judges: WARDLAW, CALLAHAN, HURWITZ